IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RELX Inc., | § | |
| | § | |
| Plaintiff, | § | No. 16-cv-9718 |
| | § | |
| vs. | § | |
| | § | COMPLAINT AND |
| INFORMATICA Corp. | § | REQUEST FOR |
| | § | TEMPORARY |
| | § | RESTRAINING ORDER |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

RELX Inc., ("RELX") Plaintiff, brings this action against Informatica, Corp. ("Informatica") and would show the Court the following:

### A. NATURE OF THE ACTION

1.  RELX presents the claims in this action to obtain the Court's declaratory judgment with regard to the interpretation and enforcement of a license agreement and services agreement governing RELX's use software licensed by Informatica. Following a disputed software audit, on November 29, 2016, Informatica issued a notice of default, invoking the termination provision in the license agreement. RELX seeks temporary and preliminary relief from the effect of termination that requires it to discontinue use and destroy all of the Informatica perpetual software licenses it owns.

### B. THE PARTIES

2.  RELX Inc. is a Massachusetts corporation with its principal place of business at 230 Park Avenue, 7th Floor, New York, New York 10169.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 1**

3.	Informatica is a Delaware corporation with its principal place of business in Redwood City, California.  Informatica can be served with process at C T CORPORATION SYSTEM, 111 Eighth Avenue, New York, New York 10011.

4.	Informatica also maintains a corporate office at 125 Park Avenue, Suite 1510, New York, New York 10017.  Informatica is registered to conduct business in New York and its DOS identification number is 2629582.

## C. JURISDICTION AND VENUE

5.	This action arises under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201 and of the Copyright Act, Title 17 U.S.C. §§ 100, *et seq.*  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 367 (supplemental jurisdiction).

6.	Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1400(a). Section 1400(a) allows copyright actions to proceed "in the district in which the defendant or his agent resides or may be found."  Informatica's agent resides in the Southern District of New York. Additionally, Informatica may be found in the district because it is registered to conduct and does conduct business in New York, and Informatica maintains a corporate office in the Southern District of New York.

7.	Furthermore, in the Master Services Agreement the parties agreed to submit to venue in any court of competent jurisdiction in the Borough of Manhattan.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 2**

## D. FACTS

I.     **LexisNexis Spends Millions of Dollar to Acquire Informatica's Software and to Hire Experts to Configure the Software in LexisNexis' Environment.**

    A.     **The 2010 License Agreement.**

8.     One of RELX's divisions is LexisNexis, a division that is a leading global provider of content and technology solutions that enable professionals in legal, corporate, tax, government, academic and non-profit organizations to make informed decisions and achieve better business outcomes.

9.     LexisNexis uses computer software to provide services to thousands of its clients around the world. Among the services provided by LexisNexis are certain subscriptions to provide data and information related to, among other things, legal cases and news feeds.

10.     LexisNexis uses Informatica software to normalize formats on new and existing documents, which is a critical functionality to provide up-to-date information to subscribers. Using the Informatica software, LexisNexis processes an average of 80 million documents each month for delivery to end users.

11.     In May 2010, Reed Elsevier Group, PLC entered into a new Master Software License Agreement with Informatica (the "License Agreement"). The License Agreement was drafted by Informatica. The License Agreement acknowledged that the products would be licensed to LexisNexis, a division of Reed Elsevier Inc.

12.     The License Agreement contained a list of software products that LexisNexis acquired as part of the transaction. The licenses included 16 licenses for B2B Data Exchange for use in a production environment. The stated license model is "CPU cores."

13. LexisNexis paid more than $600,000 for the B2B Data Exchange licenses and more than $100,000 for maintenance and support of those licenses. The total amount LexisNexis paid for the remaining licenses acquired in the 2010 License Agreement was more than $1.3 million.

14. As part of the transaction, LexisNexis purchased 720 hours of professional services from Informatica related to implementation of the Informatica products for $246,000.

> **B.   The License Agreement and Amendments Are Silent on the Issue of How to Calculate Informatica's Licensing Metric Called CPU Cores.**

15. The phrase CPU cores is not defined, and the License Agreement does not contain any provisions regarding calculation of CPU cores.

16. In October, 2010, LexisNexis purchased an additional 400 Senior Consultant hours of professional services from Informatica for $70,000. In January, 2011, LexisNexis purchased an additional 100 Senior Consultant hours of professional services from Informatica for $17,500.

17. In April 2011, LexisNexis paid $280,076.71 for software maintenance on the licenses acquired in the License Agreement. Also in 2011, LexisNexis paid for 4 additional CPU licenses of B2B Data Exchange.

18. All of the statements of work for professional services hours were subject to a Master Services Agreement dated October 1, 2009 (the "Services Agreement").

19. In June 2012, LexisNexis paid Informatica more than $3.5 million to increase LexisNexis' entitlements, including a 72 CPU core increase for B2B Data Exchange and its related products.

20. This transaction brought the total number of B2B Data Exchange and related product licenses to 92. The transaction was documented in an Amendment to Master Software License Agreement ("2012 Amendment"). The 2012 Amendment was drafted by Informatica. Again, CPU cores is not a defined term.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 4**

21.     The 2012 Amendment contained the following language "the Software Licenses granted under the Agreement ("Initial Licenses") are being Upgraded such that the entire configuration of such licenses are and shall henceforth be governed in accordance with the Informatica Environment licensing model."

22.     The capitalized terms Software Licenses, Upgraded, and Informatica Environment are not defined in the 2012 Amendment, which says, "Capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in [the 2010 License] Agreement."  None of the capitalized terms identified above are defined in the License Agreement.

23.     In July 2012, LexisNexis purchased additional hours of professional services from Informatica for $736,726.  One of the assigned Informatica resources was Nalin Mishra ("Mishra").

### C.     Informatica's Expert Consultant Installed Informatica Software on LexisNexis' Computers and Advised LexisNexis on the Proper Number of Licenses.

24.     In November 2012, Mishra installed Informatica's B2B Data Exchange product on a LexisNexis server.  Based on a historical review of the usage, this installation was unnecessary.

25.     In December 2012, LexisNexis purchased additional hours of professional services from Informatica for $430,000.  In the statement of work for these services, Informatica agreed that its professional consultant would install Informatica products and validate "proper use of Informatica in solution design."

26.     In March 2013, Mishra installed Informatica's B2B Data Exchange on two additional servers, bringing the total number of servers on which Informatica products were installed to seven.  Based on a historical review of the usage, these installations were also unnecessary

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 5**

because LexisNexis can process all of the 80 million documents per month it needs on 3 or fewer servers.

27. In 2014, LexisNexis purchased 1600 hours of Mishra's expertise related to B2B Data Exchange for $384,000.

28. Again, the Statement of work required Mishra to install Informatica products and to validate "proper use of Informatica in solution design."

29. Throughout his time at LexisNexis, Mishra installed Informatica's products and provided licensing advice as required by the relevant statements of work.

30. In 2015, Mishra determined that pursuant to Informatica's licensing policies, which were not contained in the License Agreement or any amendments, LexisNexis was using no more than 56 CPU core licenses.

31. Based on Mishra's advice, LexisNexis reduced its license entitlement for B2B Data Exchange and the associated licenses from 92 CPU core to 56 CPU core licenses. The reduction was reflected in a written amendment to the License Agreement. ("2015 Amendment").

32. LexisNexis had no guidance in the License Agreement or its amendments to calculate proper usage of the CPU cores and relied upon Informatica's advice in adjusting the license count.

33. In 2015, Reed Elsevier Inc. changed its name to RELX Inc. At approximately the same time, Reed Elsevier Group plc changed its name to RELX Group plc.

## II. LEXISNEXIS COOPERATES WITH INFORMATICA'S OVERLY BROAD AUDIT REQUESTS AND INFORMATICA'S AUDIT TOOL PURPORTEDLY FINDS HISTORICAL DEFICIENCIES.

34. Section 4.3 of the License Agreement required LexisNexis to maintain books, records, and accounts "regarding this Agreement." If Informatica had "a reasonable basis to proceed" it could request an opportunity to review the "books, records, and accounts."

35. In June 2016, Informatica submitted a proposal for a large purchase that LexisNexis later declined to accept. Subsequently, on February 24, 2016, Informatica contacted LexisNexis and requested that LexisNexis conduct an internal examination of LexisNexis' use of Informatica's software products (the "Audit").

36. LexisNexis fully cooperated with the Audit requests, even if those requests were not authorized by the language in Section 4.3 or in any other section of the License Agreement.

37. As part of the Audit, Informatica requested that LexisNexis deploy Informatica's utility tool to identify usage of Informatica's software products in the LexisNexis computing environment.

38. In an audit report prepared on October 7, 2016 Informatica claimed that the utility tool demonstrated that LexisNexis' current usage was compliant with the License Agreement, but that the utility tool demonstrated that previous usages may have exceeded the license grant.

39. Informatica charged LexisNexis with having 104 CPU core licenses installed from March 31, 2013 to May 15, 2016, which was arguably the highest historical count of CPU installations.

40. Although the highest entitlement count during the period of March 31, 2013 to May 15, 2016 was 92, Informatica's license report credits LexisNexis with the lowest entitlement count during the period, or 56 CPU core licenses.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 7**

41. Specifically, Informatica claimed that in the past, the installations on three identified servers exceeded the license grant. The servers identified on the audit report as deficient were all installed and configured by Mishra.

42. Informatica claimed it was owed $7,715,520 in license fees, maintenance fees, and back maintenance fees.

### III. INFORMATICA REFUSES TO ACCEPT RESPONSIBILITY FOR SOFTWARE IT INSTALLED AND SENDS A NOTICE OF DEFAULT TO LEXISNEXIS.

43. After reviewing its records, LexisNexis confirmed that it previously paid Informatica more than $1 million to configure the systems in question.

44. In fact, Informatica employees installed all of the software on servers reflected as deficiencies in the audit findings.

45. The audit report produced by Informatica showed that LexisNexis was compliant as of the time of the audit but alleged historical deficiencies based upon the software installed by Mishra. LexisNexis disputed the audit findings, and pointed out that even if the findings were accurate, all deficiencies were caused by Informatica.

46. Subsequently, on November 29, 2016, Informatica sent a Notice of Default to LexisNexis, invoking Section 10.2, the termination provision in the License Agreement.

47. On December 29, 2016, Informatica can purport to terminate the License Agreement. Upon termination, all "licenses granted herein shall terminate" and "Customer shall promptly, and in any event within thirty (30) days following termination, destroy the Informatica Products."

48. LexisNexis' business operations would be significantly impacted by the contractual obligation to destroy, within 30 days, all copies of Informatica software products.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 8**

49. LexisNexis paid more than $1.3 million for perpetual licenses to other Informatica software products for which there were no negative audit findings but are subject to termination under the license agreement.

50. Under the current language in the License Agreement, even if a notice of termination was unjustified, without intervention from the Court, LexisNexis would be required to immediately cease using and destroy those undisputed licenses.

### E. FIRST COUNT
### Declaratory Judgment – No Copies

51. LexisNexis re-asserts and incorporates by reference each and every matter pleaded in Paragraphs 1 through 50, above.

52. LexisNexis brings this claim for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 and 2202.

53. In its Notice of Default, Informatica invoked Section 10.2 of the License Agreement, which includes the termination provision. Upon termination, all "licenses granted herein shall terminate" and "Customer shall promptly, and din any event within thirty (30) days following termination, destroy the Informatica Products." (License Agreement § 10.3).

54. Title 17 § 106 grants to copyright owners the exclusive right to reproduce copyrighted works.

55. Because all the Informatica software that is the subject of the negative audit findings was installed by Informatica and not LexisNexis, LexisNexis did not violate Informatica's exclusive rights in its software.

56. LexisNexis respectfully requests that this Court issue its declaratory judgment that LexisNexis did not violate Informatica's exclusive rights in its software product, and accordingly there is no copying upon which Informatica may base claims of copyright infringement.

57.     The above-requested declaratory judgment is necessary to restrict and define the permissible scope of any inquiry regarding allegations of computer software product copyright infringement by Informatica.

**F. SECOND COUNT**
**Declaratory Judgment – No Default**

58.     LexisNexis re-asserts and incorporates by reference each and every matter pleaded in Paragraphs 1 through 57, above.

59.     LexisNexis brings this claim for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 and 2202.

60.     Informatica claims that LexisNexis, defaulted on the License Agreement because at some time in the past LexisNexis purportedly installed more copies of three software products than it was entitled to use.

61.     Informatica also claims that it is entitled to more than $7 million to license products that were not installed as of the date of the audit, that LexisNexis does not need, and that LexisNexis did not install.

62.     LexisNexis disagrees that it owes any licensing fees or other damages to Informatica because it did not install any infringing Informatica software, Informatica undertook the responsibility to install the software and validated that it was being properly used in LexisNexis' environment, and because the installations by Informatica were clearly unnecessary given LexisNexis' requirements.  LexisNexis disagrees that it owes licensing fees or other damages under these circumstances.  Because of the dispute, Informatica has invoked the Termination provision in the License Agreement.

63.     Initially, LexisNexis's audit materials demonstrated that it was not in default at the time it prepared the audit materials.  Informatica, nevertheless, claimed that LexisNexis should be

**PLAINTIFF'S COMPLAINT AND REQUEST**
**FOR A TEMPORARY RESTRAINING ORDER – Page 10**

charged for arguably the highest historical installation counts, while refusing to give LexisNexis credit for the highest historical license counts.

64.     Even if the installation of the products had violated a provision of the License Agreement, LexisNexis is not in default because it paid more than $1 million to Informatica for professional services to validate the proper use of the software in LexisNexis' environment.  The Informatica professional, after installing the software, instructed the LexisNexis team that LexisNexis needed only 56 PVU licenses for the configuration that Informatica's team designed.

65.     Later, Informatica claimed that it had no responsibility to ensure the software was properly licensed and that it was entitled to recover up to $7 million for use of the software.   The parties have tried to resolve their differences amicably, but have been unable to reach a resolution to the dispute because LexisNexis does not believe it owes any fees or damages for software Informatica installed on LexisNexis' network.

66.     Plaintiff respectfully requests that this Court issue its declaratory judgment that LexisNexis has not defaulted on its obligations under the License Agreement, any of the amendments, or the Master Services Agreement.

67.     The above-requested declaratory judgment is necessary to restrict and define the permissible scope of any inquiry regarding Informatica's allegations of breach of contract by LexisNexis.

### G. THIRD COUNT
**Breach of Master Services Agreement**

68.     LexisNexis re-asserts and incorporates by reference each and every matter pleaded in Paragraphs 1 through 67, above.

69.     LexisNexis brings this claim for breach of contract under 28 U.S.C. § 1367.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 11**

70. The Master Services Agreement required Informatica to provide services that conformed to the 2012 and 2013 statements of work. The relevant statements of work included requirements that obligated Informatica to install Informatica's software in LexisNexis' environment and validate proper usage. Informatica now claims that the software was installed in violation of Informatica's License Agreement.

71. Informatica's breach of the Master Services Agreement was material because Informatica was responsible for installing the software, Informatica claims it was damaged by the improper installation, and without Informatica's actions there would be no current dispute.

## H. REQUEST FOR TEMPORARY RESTRAINING ORDER

72. LexisNexis seeks injunctive relief preserving the status quo and prohibiting Informatica and all those acting in concert with it from:

   a. purporting to terminate RELX Inc.'s LexisNexis' 2010 License Agreement and any amendments thereto; and

   b. taking any action in furtherance of the purported termination that would in any way interfere, deny, limit or restrict LexisNexis' ability to access and use the Informatica software;

73. It is probable that LexisNexis will prevail on its requests for Declaratory Judgment because the existence of Informatica's software on LexisNexis' computers at some point in the past did not violate any of the terms of the License Agreement.

74. It is also probable that LexisNexis will prevail on its request for Declaratory Judgment because Informatica, and not LexisNexis, copied the B2B Data Exchange and Scaling Options onto LexisNexis' computers.

75. It is also probable that LexisNexis will prevail on its claim that Informatica breached the Master Services Agreement because Informatica agreed to validate proper use of the software, Informatica's representative installed the software in March 2013 and thereafter instructed LexisNexis to reduce its license entitlements. Informatica failed to perform the required services under the Services Agreement, and its failures caused LexisNexis damage.

76. If LexisNexis' application is not granted, harm is imminent. Informatica invoked the Termination provision and can purport to terminate LexisNexis' licenses as early as December 29, 2016. Upon termination, LexisNexis would be unable to process its 80 million documents each month or deliver accurate data to its thousands of global end users who have paid LexisNexis on a subscription basis to deliver news, legal data, and other information.

77. The harm that will result if the temporary restraining order is not issued is irreparable because LexisNexis cannot conduct its business without the ability to convert new and existing documents into normalized formats for delivery to its customers. A termination of Informatica's licenses would therefore have a significant negative impact on LexisNexis' business operations.

78. LexisNexis has no adequate remedy at law because monetary damages will be insufficient to compensate for the damage caused by Informatica's actions. LexisNexis relies on its ability to deliver data and uses Informatica software to provide to up-to-date information to thousands of end users around the world. Informatica would be unable to remedy the damage to LexisNexis' goodwill with its clients if it is unable to deliver its services as promised.

79. The balance of hardships tips in favor of LexisNexis. Monetary damages could make Informatica whole for loss of licensing revenue, if any, after the Court rules on the merits. However, LexisNexis could not be made whole after being required to discontinue using and

destroying the Informatica software, including the software that is not in dispute. LexisNexis uses that software to deliver accurate data to its subscribers.

80. Public interest is served by not interrupting or otherwise impeding LexisNexis' ability to provide accurate information to its thousands of customers, who include lawyers, doctors, journalists, and other professionals that rely on their LexisNexis subscription services to serve the public.

81. LexisNexis is willing to post a reasonable bond.

## I. REQUEST FOR PRELIMINARY INJUNCTION

82. LexisNexis asks the court to set its application for temporary injunction for a hearing, and after the hearing, issue a temporary injunction against Informatica.

## J. REQUEST FOR PERMANENT INJUNCTION

83. LexisNexis asks the court to set his request for a permanent injunction for a full trial and, after the trial, issue a permanent injunction against Informatica.

## K. DECLARATION

84. The Declaration of Jeff R. Reihl with attached exhibits, which proves the allegations in the application for injunctive relief, is attached and incorporated by reference.

## L. DEMAND FOR JURY

85. LexisNexis demands a jury trial and tenders the appropriate fee with this petition.

## M. PRAYER FOR RELIEF

**WHEREFORE**, RELX Inc. respectfully demands that judgment be entered in its favor and against Defendant Informatica and that RELX be granted the following relief:

    c.    Entry of a declaratory judgment that RELX did not violate Informatica's exclusive rights as a copyright holder;

    d.      Entry of a declaratory judgment that LexisNexis did not breach its obligations under the License Agreement, Master Services Agreement or any of the amendments;

    e.      Temporary and/or permanent injunctive relief restraining Informatica and all those acting in concert with it from:

        a.  purporting to terminate RELX Inc.'s LexisNexis' 2010 License Agreement and any amendments thereto; and

        b.  taking any action in furtherance of the purported termination that would in any way interfere, deny, limit or restrict LexisNexis' ability to access and use the Informatica software;

    f.      Entry of judgment for damages resulting from Informatica's breach of contract;

    g.      Pre-judgment and post-judgment interest;

    h.      Court costs;

    i.      Attorney fees; and

    j.      Any such other and further relief as the Court may deem appropriate.

**DATED:**    Southlake, Texas

SCOTT & SCOTT, LLP

*/s/ Robert J. Scott*
By: Robert J. Scott (Texas Bar No. 24010385)

Julie Machal-Fulks (NY Bar No. 885775)
1256 Main Street, Suite 200
Southlake, Texas 76092
(214) 999-2902
(214) 999-0333 (Fax)
Attorneys for RELX INC.

**PLAINTIFF'S COMPLAINT AND REQUEST
FOR A TEMPORARY RESTRAINING ORDER – Page 15**

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff RELX Inc. hereby demands a trial by jury in the above-captioned action of all issues triable by jury.

Dated: December 16, 2016

                                          SCOTT & SCOTT, LLP

                                          */s/ Robert J. Scott*
                                          By:  Robert J. Scott (Texas Bar No. 24010385)

                                          Julie Machal-Fulks (NY Bar No. 885775)
                                          1256 Main Street, Suite 200
                                          Southlake, Texas 76092
                                          (214) 999-2902
                                          (214) 999-0333 (Fax)
                                          Attorneys for RELX Inc.