UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RELX INC.,

                                    Plaintiff,

        v.

INFORMATICA CORP.,

                                    Defendant.

INFORMATICA CORP.,

                        Counterclaim Plaintiff,

        v.

RELX INC. and RELX GROUP PLC,

                        Counterclaim Defendants.

1:16-cv-9718-AKH

**ANSWER AND
COUNTERCLAIMS**

        Defendant and Counterclaim Plaintiff Informatica LLC, sued herein as Informatica Corp.

("Informatica"), by its undersigned counsel, hereby submits its Answer and Counterclaims in

response to the "Complaint and Request for Temporary Restraining Order" (Dkt. 1) (the

"Complaint") filed by RELX, Inc. ("RELX").

## A. NATURE OF THE ACTION[1]

        1.  Informatica admits that RELX requests, among other things, a declaratory judgment

from the Court with respect to RELX's obligations under the parties' software license agreement.

---

[1] For convenience and clarity, Informatica uses the headings from the Complaint. In so doing, Informatica does not admit any of the allegations contained in the headings. To the extent the headings from the complaint contain any factual allegations, Informatica denies those allegations.

Informatica admits that it conducted an audit of RELX's use of certain Informatica software products. Informatica admits that it sent RELX a Notice of Default dated November 29, 2016, in which Informatica referenced the termination provision of the parties' software license agreement. Informatica admits that RELX has requested a temporary restraining order and a preliminary injunction prohibiting Informatica from terminating the parties' software license agreement. Except as otherwise expressly admitted, Informatica denies the allegations in paragraph 1.

## B. THE PARTIES

2.    Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 and on that basis denies the same.

3.    Informatica admits that it is a limited liability company organized under the laws of Delaware with its principal place of business in Redwood City, California. Informatica admits the allegations in the second sentence of paragraph 3. Except as expressly admitted, Informatica denies the allegations in paragraph 3.

4.    Informatica admits the allegations in paragraph 4.

## C. JURISDICTION AND VENUE

5.    Informatica admits that RELX purports to have brought this action pursuant to the statutes cited in paragraph 5. To the extent the allegations in paragraph 5 state a legal conclusion, no responsive pleading is required. Except as expressly admitted, Informatica denies the allegations in paragraph 5.

6.    Informatica admits that it is registered to conduct business in New York, conducts business in New York, and maintains a corporate office in the Southern District of New York.

To the extent the allegations in paragraph 6 state a legal conclusion, no responsive pleading is required.  Except as expressly admitted, Informatica denies the allegations in paragraph 6.

7.     Informatica admits that it agreed to submit to venue in "any appropriate court in the Borough of Manhattan and State of New York" for disputes arising under the October 1, 2009 Agreement for Services between Reed Elsevier Inc. and Informatica.  Except as expressly admitted, Informatica denies the allegations in paragraph 7.

## D. FACTS

**I.     LEXISNEXIS SPENDS MILLIONS OF DOLLAR TO ACQUIRE INFORMATICA'S SOFTWARE AND TO HIRE EXPERTS TO CONFIGURE THE SOFTWARE IN LEXISNEXIS' ENVIRONMENT.**

**A.     The 2010 License Agreement.**

8.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 8 and on that basis denies the same.

9.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9 and on that basis denies the same.

10.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10 and on that basis denies the same.

11.     Informatica admits the allegations in the first sentence of paragraph 11. Informatica denies the allegations in the second sentence of paragraph 11.  Informatica admits the allegations in the third sentence of paragraph 11.

12.     Informatica admits that the License Agreement lists Informatica products that were licensed for use by LexisNexis.  Informatica admits that, under the License Agreement, LexisNexis obtained the right to use the B2B Data Exchange product on 16 "Production CPU cores."  Except as expressly admitted, Informatica denies the allegations in paragraph 12.

13.     Informatica admits the allegations in paragraph 13.

14.     Informatica admits that, under the License Agreement, Reed Elsevier Group PLC agreed to purchase "Professional Services for Silver TAM (B2B Architect 640 hours)" and "Professional Services for Proof of Concept 10/2009 (80 hours/$16,000)."  Except as expressly admitted, Informatica denies the allegations in paragraph 14.

**B.     The License Agreement and Amendments Are Silent on the Issue of How to Calculate Informatica's Licensing Metric Called CPU Cores.**

15.     Informatica denies the allegations in paragraph 15.

16.     Informatica admits the allegations in paragraph 16.

17.     Informatica admits the allegations in paragraph 17.

18.     Informatica admits that the documents referenced in paragraph 16 were each an Addendum to a Statement to a Work dated May 12, 2010.  Informatica further admits that that May 12, 2010 Statement of Work was executed pursuant to an Agreement for Services dated October 1, 2009.  Except as expressly admitted, Informatica denies the allegations in paragraph 18.

19.     Informatica admits that the parties executed the Amendment to Master Software License Agreement ("2012 Amendment") in June 2012, pursuant to which LexisNexis acquired additional software licenses, including additional licenses for use of the B2B Data Exchange software.  Informatica admits that the total fees owing under the 2012 Amendment, including but not limited to license fees for the B2B Data Exchange software, exceeded $3.5 million.  Except as expressly admitted, Informatica denies the allegations in paragraph 19.

20.     Informatica denies the allegations in paragraph 20.

21.     Informatica admits the allegations in paragraph 21.

22.     Informatica denies the allegations in paragraph 22.

23.     Informatica denies the allegations in paragraph 23.

**C. Informatica's Expert Consultant Installed Informatica Software on LexisNexis' Computers and Advised LexisNexis on the Proper Number of Licenses.**

24.     Informatica admits that Mishra, working with and supervised by employees from LexisNexis, installed Informatica software on a LexisNexis server in November 2012.   Except as expressly admitted, Informatica denies the allegations in paragraph 24.

25.     Informatica admits the allegations in the first sentence of paragraph 25. Informatica admits that the statement of work dated December 17, 2012 provided a description of services to be performed, which included, among other things, "[i]installations" and "[v]alidation of proper use of Informatica in solution design."  Except as expressly admitted, Informatica denies the allegations in paragraph 25.

26.     Informatica admits that Mishra, working with and supervised by employees from LexisNexis, installed Informatica software on two additional LexisNexis servers in March 2013. Informatica admits that, as of March 2013, the B2B Data Exchange software was installed on at least seven LexisNexis servers.  Except as expressly admitted, Informatica denies the allegations in paragraph 26.

27.     Informatica admits that the parties executed a Statement of Work dated December 23, 2013 under which the "Project Scope" was defined to include "1,600 hours of B2B expertise across the period of February 1 – November 30, 2014."  Informatica further admits that Mishra was identified in the Statement of Work as the "Service Provider Personnel" and that fees under the Statement of Work were not to "exceed $384,000."  Except as expressly admitted, Informatica denies the allegations in paragraph 27.

28.     Informatica denies the allegations in paragraph 28.

29.     Informatica admits that, working alongside and under the supervision of LexisNexis employees, Mishra installed Informatica software while working on-site at LexisNexis.  Except as expressly admitted, Informatica denies the allegations in paragraph 29.

30.     Informatica denies the allegations in paragraph 30.

31.     Informatica denies the allegations in paragraph 31.

32.     Informatica denies the allegations in paragraph 32.

33.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 and on that basis denies the same.

## II.     LEXISNEXIS COOPERATES WITH INFORMATICA'S OVERLY BROAD AUDIT REQUESTS AND INFORMATICA'S AUDIT TOOL PURPORTEDLY FINDS HISTORICAL DEFICIENCIES.

34.     Informatica admits that, under Section 4.3 of the License Agreement, LexisNexis agreed "to make and to maintain . . . complete books, records and accounts regarding this Agreement."  Informatica admits that Section 4.3 of the License Agreement also provides that, "[i]n the event Informatica determines there is or may be a reasonable basis to proceed, Informatica shall have the right not more than once every twelve months and on at least ten business days notice to examine such books, records, and accounts during Customer's normal business hours to verify Customer's compliance with this Agreement."  Except as expressly admitted, Informatica denies the allegations in paragraph 34.

35.     Informatica admits that it provided written notice to LexisNexis on February 24, 2016 that Informatica would conduct a review of LexisNexis' use of Informatica software products.  Except as expressly admitted, Informatica denies the allegations in paragraph 35.

36.     Informatica denies the allegations in paragraph 36.

37.     Informatica denies the allegations in paragraph 37.

38.     Informatica admits that it provided LexisNexis with a report on October 7, 2016 identifying LexisNexis' unlicensed deployment of Informatica software until at least May 15, 2016.  Except as expressly admitted, Informatica denies the allegations in paragraph 38.

39.     Informatica admits that the October 7, 2016 report states that LexisNexis deployed B2B Data Exchange software on 104 CPU cores from March 31, 2013 to May 15, 2016.  Informatica is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 39 and on that basis denies the same.

40.     Informatica denies the allegations in paragraph 40.

41.     Informatica denies the allegations in paragraph 41.

42.     Informatica admits the allegations in paragraph 41.

**III.     INFORMATICA REFUSES TO ACCEPT RESPONSIBILITY FOR SOFTWARE IT INSTALLED AND SENDS A NOTICE OF DEFAULT TO LEXISNEXIS.**

43.     Informatica denies the allegations in paragraph 43.

44.     Informatica admits that Informatica employees, working with and under the supervision of employees of LexisNexis, installed Informatica software on servers referenced in the October 7, 2016 report.  Except as expressly admitted, Informatica denies the allegations in paragraph 44.

45.     Informatica denies the allegations in paragraph 45.

46.     Informatica admits that it sent LexisNexis a Notice of Default dated November 29, 2016, in which Informatica referenced Section 10.2 of the License Agreement.  Except as expressly admitted, Informatica denies the allegations in paragraph 46.

47.     Informatica admits that it had the right to terminate the License Agreement on December 29, 2016.  Informatica admits the allegations in the second sentence of paragraph 47.

48.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48 and, on that basis, denies the same.

49.     Informatica denies the allegations in paragraph 49.

50.     Paragraph 50 states a legal conclusion to which no response is required.  To the extent paragraph 50 is found to contain any factual allegations, Informatica denies those allegations.

## E. FIRST COUNT
### Declaratory Judgment – No Copies

51.     Informatica re-asserts and incorporates by reference its responses to paragraphs 1-50, above.

52.     Informatica admits that LexisNexis purports to bring this action under the statutes and rule referenced in paragraph 52.

53.     Informatica admits that its Notice of Default referenced Section 10.2 of the License Agreement, which includes a termination provision.  Informatica admits the allegations in the second sentence of paragraph 53.  Except as expressly admitted, Informatica denies the allegations in paragraph 53.

54.     Paragraph 54 recites a legal conclusion to which no response is required.

55.     To the extent the allegations in paragraph 55 state a legal conclusion, no responsive pleading is required.  Otherwise, Informatica denies the allegations in paragraph 55.

56.     Informatica denies the allegations in paragraph 56 and further denies that LexisNexis is entitled to the relief requested in paragraph 56.

57.     Informatica denies the allegations in paragraph 57.

## F. SECOND COUNT
### Declaratory Judgment – No Default

58.     Informatica re-asserts and incorporates by reference its responses to paragraphs 1-57, above.

59.     Informatica admits that LexisNexis purports to bring this action under the statutes and rule referenced in paragraph 59.

60.     Informatica admits that LexisNexis is in default under the License Agreement because it has failed to remit to Informatica a shortfall in payments that resulted from LexisNexis' deployment of Informatica software in excess of the rights granted under the License Agreement.  Informatica further admits that LexisNexis exceeded the licenses with respect to at least three software products.  Except as expressly admitted, Informatica denies the allegations in paragraph 60.

61.     Informatica admits that it is entitled to more than $7 million as a result of LexisNexis's deployment of software in excess of the rights granted under the License Agreement.  Except as expressly admitted, Informatica denies the allegations in paragraph 61.

62.     Informatica admits that "LexisNexis disagrees that it owes any licensing fees or other damages to Informatica."  Informatica admits that it terminated the License Agreement on May 9, 2017.  Except as expressly admitted, Informatica denies the remaining allegations in paragraph 62.

63.     Informatica denies the allegations in paragraph 63.

64.     Informatica denies the allegations in paragraph 64.

65.     Informatica admits that LexisNexis owes more than $7 million for deployment of Informatica software in excess of the rights granted in the License Agreement.  Informatica admits that the parties have attempted to resolve their dispute amicably, but have been unable to reach a resolution.  Informatica is without knowledge or information sufficient to form a belief

about the truth of the allegations concerning LexisNexis' beliefs and, on that basis, denies the same. Except as expressly admitted, Informatica denies the allegations in paragraph 65.

66.     Informatica denies that LexisNexis is entitled to the relief requested in paragraph 66.

67.     Informatica denies the allegations in paragraph 67.

## G. THIRD COUNT
### Breach of Master Services Agreement

68.     Informatica re-asserts and incorporates by reference its responses to paragraphs 1-67, above.

69.     Informatica admits that LexisNexis purports to bring this action under the statute referenced in paragraph 69.

70.     Informatica denies the allegations in paragraph 70.

71.     Informatica denies the allegations in paragraph 71.

## H. REQUEST FOR TEMPORARY RESTRAINING ORDER

72.     Informatica denies that LexisNexis is entitled to the relief sought in paragraph 72.

73.     To the extent the allegations in paragraph 73 state a legal conclusion, no responsive pleading is required. Otherwise, Informatica denies the allegations in paragraph 73.

74.     To the extent the allegations in paragraph 74 state a legal conclusion, no responsive pleading is required. Otherwise, Informatica denies the allegations in paragraph 74.

75.     To the extent the allegations in paragraph 75 state a legal conclusion, no responsive pleading is required. Otherwise, Informatica denies the allegations in paragraph 75.

76.     To the extent the allegations in paragraph 76 state a legal conclusion, no responsive pleading is required. Otherwise, Informatica denies the allegations in the first sentence of paragraph 76. Informatica admits that it had the right to terminate LexisNexis'

licenses as early as December 29, 2016 and exercised its right to terminate the licenses on May 9, 2017, but denies the remaining allegations in the second sentence of paragraph 76. Informatica denies the allegations in the third sentence of paragraph 76.

77.     To the extent the allegations in paragraph 77 state a legal conclusion, no responsive pleading is required.  Otherwise, Informatica denies the allegations in paragraph 77.

78.     To the extent the allegations in paragraph 78 state a legal conclusion, no responsive pleading is required.  Otherwise, Informatica denies the allegations in paragraph 78.

79.     To the extent the allegations in paragraph 79 state a legal conclusion, no responsive pleading is required.  Otherwise, Informatica denies the allegations in paragraph 79.

80.     To the extent the allegations in paragraph 80 state a legal conclusion, no responsive pleading is required.  Otherwise, Informatica denies the allegations in paragraph 80.

81.     Informatica is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 81 and, on that basis, denies the same.

## I. REQUEST FOR A PRELIMINARY INJUNCTION

82.     Informatica denies that LexisNexis is entitled to the relief sought in paragraph 82.

## J. REQUEST FOR A PERMANENT INJUNCTION

83.     Informatica denies that LexisNexis is entitled to the relief sought in paragraph 83.

## K. DECLARATION

84.     Informatica admits that LexisNexis filed the Declaration of Jeff R. Reihl, along with exhibits.  Except as expressly admitted, Informatica denies the allegations in paragraph 84.

## L. DEMAND FOR JURY

85.     Informatica admits that LexisNexis purports to demand a jury trial, but denies that LexisNexis is entitled to the relief it seeks.

## M. PRAYER FOR RELIEF

Informatica denies that RELX Inc. is entitled to the relief it seeks.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The allegations in the Complaint fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

At all relevant times, Informatica complied with all applicable laws, regulations and standards.

### Third Affirmative Defense

Informatica did not breach or violate any alleged contractual or legal duty owed to RELX.

### Fourth Affirmative Defense

RELX is in material breach of the Master Software License Agreement.

### Fifth Affirmative Defense

RELX has infringed and continues to infringe valid and enforceable copyrights owned by Informatica.

### Sixth Affirmative Defense

At all relevant times, Informatica has acted in good faith and without malice or other intent to injure or harm RELX.

### Seventh Affirmative Defense

RELX's claims are barred, in whole or in part, by its failure to mitigate damages.

### Eighth Affirmative Defense

RELX's claims are barred, in whole or in part, by the doctrine of estoppel.

## Ninth Affirmative Defense

RELX's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Tenth Affirmative Defense

RELX's claims are barred, in whole or in part, by the doctrine of waiver.

## Eleventh Affirmative Defense

RELX cannot meet its burden of proof with respect to any of the elements of its cause of action.

## Twelfth Affirmative Defense

RELX cannot recover for breach of contract because RELX has not suffered any recoverable damages.

## Thirteenth Affirmative Defense

RELX's claims are barred, in whole or in part, by the doctrines of release or accord and satisfaction.

## Fourteenth Affirmative Defense

RELX's claims are barred, in whole or in part, by the doctrine of ratification.

## Fifteenth Affirmative Defense

RELX is not entitled to the relief sought in the Complaint and an award of such relief would unjustly enrich RELX.

## Additional Affirmative Defense

Informatica reserves the right to assert any additional affirmative defenses which become apparent based on facts in discovery or otherwise.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Informatica LLC, sued herein as Informatica Corp. ("Informatica"), for its Counterclaims against Plaintiff RELX Inc. (formerly known as Reed Elsevier, Inc.) and RELX Group PLC (formerly known as Reed Elsevier Group PLC), hereby alleges as follows:

## NATURE OF ACTION

1.      Informatica develops and licenses innovative software that helps businesses efficiently manage their data.  In this case, Informatica granted Reed Elsevier Group PLC and its affiliates, including the LexisNexis division of Reed Elsevier, Inc. (collectively referred to as "RELX"), a limited license to various copyrighted software programs.  Under the parties' license agreement, RELX was only allowed to run the software programs on a limited number of "CPU cores" – a widely-used and commonly understood term that refers to the computation engines of a microprocessor that read and execute programs.

2.      In 2016, Informatica conducted an audit and determined that, for several years, RELX had deployed the software programs on many more CPU cores than permitted under the parties' license agreement.  RELX thus breached the parties' license agreement, infringed Informatica's copyrights, and unjustly enriched itself at Informatica's expense.  In these counterclaims, Informatica seeks injunctive relief from the Court enjoining RELX from continuing to breach the parties' license agreement and continuing to infringe Informatica's copyrights.  Informatica further seeks money damages, including attorneys' fees, for the injuries Informatica has suffered as a result of RELX's breach of contract, copyright infringement, and unjust enrichment.

## PARTIES

3.      Counterclaim Plaintiff Informatica is a limited liability company organized under the laws of Delaware with its principal place of business in Redwood City, California.

4.      Counterclaim Defendant RELX Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business at 255 Washington Street, Newton, Massachusetts 02458. RELX Inc. is registered to conduct business in New York and its NY DOS identification number is 1134190. RELX Inc. was known as Reed Elsevier Inc. until February 2015, when the company changed its name. LexisNexis is a division of RELX Inc.

5.      Counterclaim Defendant RELX Group PLC is a United Kingdom registered company with its principal executive offices in the United States at 125 Park Avenue, 23rd Floor, New York, New York, 10017. RELX Group PLC is a corporate parent of RELX Inc. RELX Group PLC was known as Reed Elsevier Group PLC until February 2015, when the company changed its name.

6.      For ease of use, Counterclaim Defendants RELX Inc. and RELX Group PLC will be referred to collectively herein as "RELX."

## JURISDICTION AND VENUE

7.      This Counterclaim arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. and New York state law. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND FACTS

### A. Informatica's Software and Services

9. Informatica is a leading provider of data integration software and services. Informatica's products allow businesses to collect, aggregate, and integrate large amounts of data from a wide variety of sources for delivery to business users.

10. Informatica has invested significant resources in developing its software products. Informatica is the sole owner and proprietor of all right, title and interest in and to the copyrights in its software products, including the exclusive rights in the following registered copyrights related to the B2B Data Exchange software (referred to collectively as the "B2B Data Exchange Works"):

| Title of Work | Registration Number |
|---|---|
| Informatica B2B Data Transformation 9.6.1 | TX 8-331-442 |
| Informatica B2B Data Exchange 9.6.1 | TX 8-331-795 |
| Informatica HParser 9.6.1 | TX 8-331-933 |
| Informatica PowerCenter Enterprise Grid Option 9.6.1 | TX 8-331-715 |
| Informatica B2B Data Transformation 10.1 | TX 8-330-961 |
| Informatica B2B Data Exchange 10.1 | TX 8-328-376 |
| Informatica HParser 10.1 | TX 8-330-963 |

11. The B2B Data Exchange Works include uniquely expressed source code, object code, structure, architecture, modules, algorithms, data structures, and control instructions. The B2B Data Exchange Works are creative computer programs that were the product of skill, discretion, and creativity. The B2B Data Exchange Works are "enterprise" software, meaning software commonly licensed and used by businesses and large organizations, as opposed to software solely for use by individuals. The B2B Data Exchange Works are of significant value to Informatica and are used on a daily basis by Informatica's customers.

12.     As is typical for enterprise software, Informatica licenses the B2B Data Exchange Works on the basis of the number of CPU cores that are capable of executing the software programs.  The term CPU cores is widely used and commonly understood both in the context of software licensing and the context of computer technology more generally.  For example, Intel commonly refers to the number of cores found in its processors, as can be seen on Intel's website:



### Intel® Core™ i7-7920HQ Processor

- 8 MB Cache
- 4 Cores
- 8 Threads

*See* http://www.intel.com/content/www/us/en/products/processors/core/i7-processors.html?cid=sem43700010311777631&intel_term=intel+core+i7&gclid=CIGe94fJxdM CFUhYDQodJWoNrA&gclsrc=aw.ds.

13.     Similarly, enterprise servers are commonly described based on the number of CPU cores that may be included, as can be seen from this portion of Dell's website describing its PowerEdge R930 Rack Server:



### Built for scalability and speed

Maximize the performance of your most demanding enterprise applications, including CRM, ERP, OLTP and in-memory databases. The PowerEdge R930 flexibly scales to optimize transactions and operations and can significantly reduce latency. Leveraging the latest Intel® Xeon® processor E7 v4 product family (up to 24 cores per processor), the 4-socket R930 can scale to meet virtually any challenge.

- Utilize all 96 processing cores to access up to 6TB DDR4 memory on 96 DIMMs.
- Optimize performance across compute, memory and I/O with up to eight PCIe SSDs.
- Protect mission-critical and data-intensive applications with Intel E7 RAS features.

*See* http://www.dell.com/us/business/p/poweredge-r930/pd

    **B.**        **May 28, 2010 Master Software License Agreement ("MSLA") between Informatica and Reed Elsevier Group PLC**

14.      On May 28, 2010, Reed Elsevier Group PLC entered into the MSLA with Informatica.  The terms of the MSLA were the subject of extensive negotiations between RELX and Informatica.

15.      Under the MSLA, Informatica granted Reed Elsevier Group PLC a limited license to use certain "Informatica Products" listed in Exhibit B to the MSLA.  The licensed "Informatica Products" included the B2B Data Exchange Works.  Pursuant to Exhibit B, Informatica granted Reed Elsevier Group PLC a license to deploy the B2B Data Exchange Works on 16 "Production CPU cores."

16.      Exhibit C to the MSLA provided the pricing for the license rights and support services that Informatica granted to Reed Elsevier Group PLC.  Exhibit C, like Exhibit B, indicated that Reed Elsevier Group PLC had purchased a license to use B2B Data Exchange software on 16 "Production CPU cores."

17.      Section 2.1.1 of the MSLA provided that the use of "any/all Informatica Software ("Software") that may be licensed under this Agreement for internal use by the Customer and/or its Affiliates" is limited by "the terms and conditions set forth in the Software's Informatica Product Description Schedule," which was attached to the MSLA as Exhibit F at the request of RELX.

18.      Section 2.2 of the MSLA further provided that "[u]se of Informatica Products by Customer and End Users is further limited as provided in such Exhibits as are or may be attached hereto and incorporated by reference into this Agreement."  Like Section 2.1.1, Section 2.2 of the

MSLA provided that "use of the Informatica Products is further limited as described in the Informatica Product Description Schedule."

19.     The Informatica Product Description Schedule provided, among other things, definitions for numerous terms used in the MSLA, including "Production CPU-cores," "CPU," "Single-Core Processor," and "Multi-Core Processor."  For example, the Informatica Product Description Schedule provided:

> **CPU** (Central Processing Unit) or **Single-Core Processor** is a single complete computation engine (execution core) that is fabricated on a single chip that plugs into a single socket.  **Multi-Core Processor** integrates two (2) or more execution cores on a single chip that plugs into a single socket.
>
> *     *     *
>
> **Production CPU-cores** (or 'Production CPUs') means the total number of CPU-cores licensed to support one (1) or more Software Application Services in a production environment.

20.     The Informatica Product Description Schedule also provided the "General License Terms" applicable to the software licensed under the MSLA.  For example, the license terms for the B2B Data Exchange software can be found on pages 10-12 of Exhibit F.  The B2B Data Exchange license terms state, among other things, that "Customer may use such software in a Flex CPU Environment provided such use does not exceed the total number of licensed Production CPU-cores."

**C.     The 2012 and 2015 Amendments to the MSLA**

21.     In December 2011, RELX purchased licenses to deploy the B2B Data Exchange Works on four additional CPU cores, raising the total number of core licenses to 20.

22.     On June 29, 2012, Informatica and Reed Elsevier Group PLC executed an Amendment to the License Agreement (the "June 2012 Amendment").  The recitals to the June 2012 Amendment indicate that the LexisNexis division of Reed Elsevier Group PLC wanted "to

acquire additional Software licenses to expand and augment the data processing capabilities, applications and services it performs and provides to End Users."

23.    Under the June 2012 Amendment, the parties agreed that the "Initial Licenses" to the B2B Data Exchange Works would be "Upgraded."  Informatica also granted Reed Elsevier Group PLC "certain new Software licenses."  The "sum" of the licenses was set forth in Section 1 of the June 2012 Amendment.  Section 1 indicates that, following the June 2012 Amendment, RELX was licensed to deploy the B2B Data Exchange Works on 72 Production CPU cores.

24.    The parties agreed that the licenses granted under the June 2012 Amendment were subject to the "restrictions set forth in the [MSLA]" and "the custom Informatica Product Description Schedule" that was attached to the MSLA as Exhibit F.

25.    On February 11, 2015, the parties executed an additional amendment to the MSLA (the "February 2015 Amendment").  The February 2015 Amendment terminated "certain of the Software Licenses previously granted under the" MSLA, including 16 of the Production CPU core licenses for the B2B Data Exchange software, the B2B DT Accelerator software, and the Enterprise Grid Option software.  The February 2015 Amendment provided that "the retirement and termination of the licenses (16 CPU-cores) reduces the number licensed for this configuration to 56 CPU-cores."

26.    As a result of the retirement and termination of the licenses under the 2015 Amendment, Informatica agreed to refund a portion of Reed Elsevier Group PLC's pre-paid Support Services Fees.

**D.    RELX's Violations of the MSLA**

27. On February 24, 2016, Informatica notified RELX that Informatica would perform an audit of RELX's use of Informatica's software, as permitted by Section 4.3 of the MSLA.

28. RELX delayed for months in providing Informatica with information necessary for the audit and, to this day, has refused to give Informatica certain relevant information. Informatica discovered later that RELX used the delay to expunge the B2B Data Exchange Works from several servers in hopes of giving the impression that RELX was in compliance with the MSLA.

29. Informatica sent RELX an audit report in October 2016 showing that RELX had exceeded the software licenses granted under the MSLA. For example, from March 31, 2013 until February 11, 2015, RELX deployed the B2B Data Exchange Works on 104 Production CPU cores despite having licenses for only 72 Production CPU cores. Additionally, between February 11, 2015 and May 15, 2016, RELX deployed the B2B Data Exchange Works on 104 Production CPU cores despite having licenses for only 56 Production CPU cores. Indeed, despite terminating 16 licenses for the B2B Data Exchange Works in February 2015, RELX made no attempt to reduce the deployment of the software programs.

30. RELX also exceeded the rights granted under the MSLA prior to March 31, 2013. For example, from October 29, 2011 until June 29, 2012, RELX deployed the B2B Data Exchange Works on 32 Production CPU cores despite having licenses for only 16 Production CPU cores prior to December 2011 and for only 20 CPU production cores from December 2011 until June 2012.

31. RELX was aware of the number CPU cores it was using to execute the B2B Data Exchange Works. As noted above, CPU cores are a standard metric in the licensing of enterprise

software and, more generally, commonly used terms with respect to computer technology. Moreover, on March 19, 2013, a RELX employee sent an email to several other RELX employees "as a reminder" of the number of Production CPU cores that RELX was using. The employee noted that RELX had five original servers ("psc3813, psc3814, psc3815, psc3816, psc3817") and was adding two new servers ("psc33841" and "psc33842"). The employee reminded his colleagues that each of the original servers had "2 sockets * 4 cores/socket == equivalent of 8 CPUs." The employee further noted that each of the new servers had "4 sockets * 8 cores/socket == equivalent of 32 CPUs." The employees responsible for RELX's use of the B2B Data Exchange Works were thus aware that, in March 2013, the software was deployed on 104 CPU Production cores.

32.     RELX attached a portion of the above-referenced email chain as Exhibit I to the Declaration of Jeff R. Reihl, which was filed with the Court on December 16, 2016. RELX, however, altered the email chain to delete the email from the RELX employee reminding his colleagues of the number of Production CPU cores that RELX was using.

**E.     RELX Refuses to Remit the Shortfall in Its Licensing Payments**

33.     Under the Section 4.3 of the MSLA, RELX agreed "to immediately remit to Informatica any shortfall in payment disclosed by Informatica's examination" of compliance with the MSLA.

34.     On October 7, 2016, Informatica provided RELX with the report identifying instances in which RELX had exceeded its licenses for the B2B Data Exchange Works. Informatica noted that the shortfall in payments exceeded $7.7 million.

35.     On November 29, 2016, Informatica provided formal written notice that Reed Elsevier Group PLC was in default of the MSLA.   To date, however, RELX has refused to remit the shortfall in its licensing payments.

36.     Under Section 10.2 of the MSLA, "a party may terminate this Agreement if the other party materially defaults under this Agreement and fails to cure such default within 30 days after the receipt of written notice of such default and intent to terminate from the other party." Given RELX's failure to cure its default, Informatica has the right to terminate the MSLA.

37.     Upon termination, the licenses granted under the MSLA "shall terminate" and Reed Elsevier Group PLC "shall promptly, and in any event within thirty (30) days following termination, destroy the Informatica Products."

38.     On May 9, 2017, Informatica sent RELX written notice that it was terminating the MSLA.  On information and belief, RELX continues to use the B2B Data Exchange works and has not yet destroyed the Informatica Products.

39.     Every time that RELX launches the B2B Data Exchange Works after May 9, 2017, an unlicensed copy of the software is made in the memory of the computer executing the software.

40.     Under Section 11.4 of the MSLA, Informatica is entitled to recover reasonable attorneys' fees and expenses incurred in connection with a successful action to enforce the provisions of the MSLA.

## CAUSES OF ACTION

### FIRST COUNT
**(Breach of Contract – Master Software License Agreement)**

41.     Informatica repeats and realleges each and every allegation above as if fully set forth herein.

42. The MSLA constitutes a valid and enforceable contract between Informatica and RELX. The MSLA is, by its terms, governed by the laws of the State of New York.

43. Informatica has performed its obligations under the MSLA.

44. By reason of the acts and omissions described above, RELX has breached its obligations under the MSLA. RELX's breaches include, but are not limited to, (i) RELX's deployment of the B2B Data Exchange Works in violation of the terms and conditions set forth in the MSLA; (ii) RELX's failure to remit to Informatica the shortfall in payments owning under the MSLA; and (iii) RELX's violation of the default and termination provisions of the MSLA.

45. Informatica has been damaged in an amount to be proven at trial, which harm includes, without limitation, money damages, Informatica's costs and attorneys' fees incurred in enforcing the MSLA, and interest thereon. These amounts, exclusive of interest and costs, exceed $75,000.

46. Unless enjoined and restrained by this Court, RELX's continuing breaches of the MSLA will irreparably injure Informatica. Damages are inadequate to fully compensate Informatica for RELX's continuing wrongful conduct. Informatica is entitled to injunctive relief to restrain and enjoin RELX from continuing to breach the MSLA.

## SECOND COUNT
### (Copyright Infringement – 17 U.S.C. §§ 101 *et seq.*)

47. Informatica repeats and realleges each and every allegation above as if fully set forth herein.

48. The B2B Data Exchange Works are creative works of original authorship and copyrightable subject matter under the copyright laws of the United States.

49. Informatica owns valid and enforceable copyrights in the B2B Data Exchange Works.

50. Informatica has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in its B2B Data Exchange Works.

51. As described above, RELX has infringed and will continue to infringe Informatica's copyrights for the B2B Data Exchange Works by, among other things, installing, reproducing, distributing, displaying, and creating derivative works based on the B2B Data Exchange Works outside the permitted scope of the MSLA and following the termination of the MSLA in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

52. RELX's infringement of Informatica's copyrights has been intentional, purposeful, willful, and in disregard of and with indifference to Informatica's rights.

53. As a direct and proximate result of RELX's wrongful conduct, Informatica has suffered substantial and irreparable injuries.

54. Informatica is entitled to damages for the injuries it has sustained and will sustain. Informatica is also entitled to any gains, profits and advantages obtained by RELX as a result of its acts of infringement. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Informatica, but will be established according to proof at trial. Informatica is also entitled to recover statutory damages for RELX's willful infringement of its copyrights.

55. Unless enjoined and restrained by this Court, RELX will continue to infringe Informatica's rights in the B2B Data Exchange Works. Informatica's remedies at law are not adequate to compensate Informatica for these continuing injuries. Informatica is entitled to preliminary and permanent injunctive relief to restrain and enjoin RELX's continuing infringing conduct.

56.     Informatica is also entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

### THIRD COUNT
**(Vicarious Copyright Infringement – 17 U.S.C. §§ 101 *et seq.*)**

57.     Informatica repeats and realleges each and every allegation above as if fully set forth herein.

58.     Informatica is informed and believes and thereon alleges that RELX had a right and ability to supervise the infringing activities of employees and consultants, including but not limited to consultants working at RELX's facilities in Ohio who use the B2B Data Exchange Works.

59.     Informatica is informed and believes and thereon alleges that RELX had and continues to have the ability to control the infringing activities of its employees and consultants. For example, RELX had and continues to have the ability to instruct those employees and consultants to install infringing copies of the B2B Data Exchange Works. Additionally, RELX had and continues to have the ability to instruct those employees and consultants to launch the B2B Data Exchange Works, thereby creating infringing copies of the software in the memory of the computer executing the program.

60.     Informatica is informed and believes and thereon alleges that RELX had and continues to have a direct financial interest in the infringing activities of its employees and consultants. For example, the infringing activities are directly benefiting RELX by allowing it to process data that RELX provides to users of the LexisNexis service in return for a fee.

61.     The B2B Data Exchange Works are creative works of original authorship and copyrightable subject matter under the copyright laws of the United States.

62.     RELX's vicarious infringement of Informatica's copyrights has been intentional, purposeful, willful, and in disregard of and with indifference to Informatica's rights.

63.     As a direct and proximate result of RELX's vicarious infringement, Informatica has suffered substantial and irreparable injuries.

64.     Informatica is entitled to damages for the injuries it has sustained and will sustain. Informatica is also entitled to any gains, profits and advantages obtained by RELX as a result of its acts of vicarious infringement.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Informatica, but will be established according to proof at trial.  Informatica is also entitled to recover statutory damages for RELX's willful infringement of its copyrights.

65.     Unless enjoined and restrained by this Court, RELX will continue to vicariously infringe Informatica's rights in the B2B Data Exchange Works.  Informatica's remedies at law are not adequate to compensate Informatica for these continuing injuries.  Informatica is entitled to preliminary and permanent injunctive relief to restrain and enjoin RELX's continuing infringing conduct.

66.     Informatica is also entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

## FOURTH COUNT
### (Unjust Enrichment)

67.     Informatica repeats and realleges each and every allegation above as if fully set forth herein.

68.     Informatica has a direct relationship with RELX at least because the parties executed the MSLA and Informatica supplied certain software and maintenance support services to RELX.

69. Informatica conferred benefits upon RELX, namely a limited right to deploy Informatica's software and use the associated maintenance and support services.

70. RELX was aware of, and appreciated, these benefits by accessing and using the B2B Data Exchange Works and receiving the benefit of the maintenance and support services.

71. RELX's access to and copying of the B2B Data Exchange Works in excess of and outside the scope of its licenses, as well as its enjoyment of unpaid maintenance and support services, has resulted in an injustice such that it would be inequitable for RELX to retain the benefit of the B2B Data Exchange Works and the maintenance and support services without paying proper value in return.

72. RELX is thus obliged to pay Informatica damages associated with RELX's unjust enrichment at the expense of Informatica. Additionally, in engaging in the conduct described above, RELX acted wantonly, intentionally, willfully, and maliciously with respect to Informatica and Informatica's rights such that Informatica is entitled to an award of punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Informatica respectfully requests that the Court enter judgment dismissing the Complaint with prejudice and in favor of Informatica on all counts of its Counterclaims, granting the following relief:

    a.   enjoining and restraining RELX, its officers, directors, agents, employees, representatives, and all persons acting in concert with them from further breaching the MSLA, including, without limitation, violating the termination provisions of the MSLA;

b. preliminarily and permanently enjoining and restraining RELX, its officers, directors, agents, employees, representatives, and all persons acting in concert with them from further violation of Informatica's copyrights, including without limitation any further us of the B2B Data Exchange Works;

c. directing RELX to render a full and complete accounting to Informatica for RELX's profits, gains, advantages or the value of the business opportunities received from the foregoing acts of infringement and unjust enrichment;

d. awarding compensatory damages to Informatica for all damages suffered by Informatica and for any profits or gain by RELX attributable to infringement of the B2B Data Exchange Works, breach of the MSLA, and unjust enrichment in amounts to be determined at trial;

e. awarding Informatica punitive damages in a sum to be determined at trial;

f. directing RELX to make restitution to Informatica for all ill-gotten gains unjustly obtained and retained by RELX through the acts complained of here;

g. awarding statutory damages to Informatica, as permitted by law;

h. awarding Informatica its costs and reasonable attorneys' fees;

i. awarding Informatica pre- and post-judgment interest to the extent allowed by law; and

j. granting such other and further relief as the Court deems appropriate and just.

Dated:     New York, New York
           May 10, 2017

FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP

By: _____/s/_____
                    John A. Borek

One New York Plaza
New York, New York 10004-1980
Tel:  (212) 859-8000
Fax:  (212) 859-4000
john.borek@friedfrank.com

FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP
Scott W. Doyle (not admitted in SDNY)
Jonathan R. DeFosse (not admitted in SDNY)
801 17th Street, N.W.
Washington, D.C. 20006
Tel: 202.639.7000
Fax: 202.639.7003
scott.doyle@friedfrank.com
jonathan.defosse@friedfrank.com

Attorneys for Defendant and
    Counterclaim Plaintiff
*Informatica LLC, sued herein as
    Informatica Corp.*