**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | | |
|---|---|---|---|
| RELX Inc., | § § | | |
| Plaintiff, | § § | No. | 16-cv-9718 (AKH) |
| vs. | § § § | RESPONSE TO | |
| INFORMATICA LLC | § § | STATEMENT OF MATERIAL FACTS IN SUPPORT OF | |
| Defendant. | § § § | INFORMATICA'S RENEWWED MOTION FOR SUMMARY JUDGMENT | |

| | |
|---|---|
| INFORMATICA LLC, | § § |
| Counter-Plaintiff, | § § § |
| vs. | § § |
| RELX Inc., RELX Group plc | § § § |
| Counter-Defendants. | § |

_____

RELX Inc. and RELX Group plc (collectively "RELX") object to Informatica LLC's ("Informatica") Statement of Undisputed Material Facts ("Statement"), filed in support of its Motion for Summary Judgment (ECF No. 107). Many of the purported material facts have no bearing on the outcome of the matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is "material" only if it "might affect the outcome of the suit under the governing law"). Rather than providing only material facts, Informatica instead offers more than 100 factual assertions, including general background information and matters otherwise immaterial to this case, many of which are, in fact, disputed.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF
INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 1**

Subject to that objection, pursuant to Rules 56.1(b)-(d) of the Local Rules of the United States District Court for the Southern District of New York, RELX, by undersigned counsel, respectfully submit the following response to Informatica's Statement. This response solely responds to Informatica's Statement by identifying which of the factual grounds are disputed and unless included in RELX's Statement of Undisputed Materials Facts, have no bearing on RELX's Motion for Partial Summary Judgment or the factual support for that Motion.

Informatica disingenuously maintains that there are no genuine issues of material fact with respect to the grounds entitling Informatica to summary judgment.

The paragraph numbers for these Responses refer to the corresponding numbers in Informatica's Statement.

RELX's Statement is as follows:

1. Undisputed.

2. Undisputed but immaterial.

3. Undisputed.

4. Undisputed that Informatica filed Copyright registrations for the identified products. Disputed that the Copyright registrations are valid and enforceable and that the registrations cover all files, upgrade scripts, and executables that LexisNexis allegedly copied.

5. Undisputed.

6. Undisputed.

7. Disputed that the Statements of Work ("SOW"s) were limited to technical consulting services. Informatica agreed to perform a number of services, including installation, guidance and recommendations for system design and architecture, validation of proper use in

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 2**

RELX's environment, and leadership on implementation. *See* Declaration of Brandon ("Billingsley Decl." Docket 55), Exhibit T (Docket 55-20).

8. Undisputed that Informatica's employees performed work on-site at RELX's facilities. Disputed that Informatica employees were limited to technical consultants, some including Nalin Mishra ("Mishra") were described project leads. Billingsley Decl., Exhibits S-T.

9. Undisputed, subject to clarification. As described above, Mishra was a lead, not merely a technical consultant. Billingsley Decl., Exhibits S-T.

10. Undisputed, subject to clarification. The on-site terms quoted by Informatica applied to the work Mishra did for RELX. The statement is misleading because it omits paragraph 24 of the Services Agreement to which it is attached requiring Informatica to remain solely responsible for the supervision of Mishra. Declaration of Jeff Reihl ("Reihl Decl.") at ¶ 20, Exhibit 6.

11. Undisputed that SOWs governed the scope of the services. Disputed that the SOWs) were limited to services that were technical in nature. Informatica agreed to perform a number of services, including installation, guidance and recommendations for system design and architecture, validation of proper use in RELX's environment, and leadership on implementation. *See* Declaration of Brandon ("Billingsley Decl." Docket 55), Exhibit T (Docket 55-20).

12. Disputed that the RELX project coordinators provided instructions for how to install Informatica software. Informatica was responsible for installing software and leading the implementation. Reihl Decl. at ¶ 19.

13. Disputed that Mishra was not involved in licensing. Mishra provided information about how many licenses LexisNexis was "utilizing." Deposition of Randy Mickey at pp. 93-97.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 3**

14. Undisputed that an Informatica technical consultant would not negotiate a license agreement. Disputed that Mishra was unfamiliar with the terms Informatica's license agreement, particularly that Mishra did not know how Informatica licensed the software Mishra installed.

15. Undisputed.

16. Undisputed.

17. Undisputed, but immaterial.

18. Disputed. It is very unusual for software licenses to be measured by "CPU cores." A CPU and a core are two distinct and separate parts of a computing environment. While some software is licensed by CPUs, and some is licensed by cores, it is not typical for software to be licensed by CPU cores. Billingsley testified that there are a several different definitions for CPUs and cores. Billingsley Deposition at p. 16. Reihl Decl. at ¶ 34.

19. Undisputed.

20. Undisputed, subject to clarification. A "core" is the processing unit that receives instructions and performs calculations, or actions, based on those instructions.

21. Undisputed, subject to clarification. Although RELX does not dispute that cores are a common term in hardware discussions, cores are not defined commonly across all software publishers when it comes to software licensing. Reihl at ¶ 35.

22. Immaterial. Intel is not a party to this suit and the fact that it advertises a computer containing cores will not affect the outcome of this matter.

23. Disputed. Because Informatica is not a hardware vendor, Billingsley is unqualified to say what the technical specifications for hardware vendors generally provide. Furthermore, technical specifications can vary greatly by vendor.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 4**

24.     Immaterial.  Dell is not a party to this suit and the fact that it advertises a computer containing cores will not affect the outcome of this matter.

25.     Disputed.  Other than in Exhibit B, the term "CPU core" does not appear in the License Agreement at all.

26.     Disputed.  One version of a purported Exhibit F to the License Agreement contained the quote referenced in the Billingsley Declaration.  It is not clear that the version referenced in the Billingsley Declaration was properly incorporated into the License Agreement.

27.     Disputed.  See above at ¶ 26.

28.     Disputed.  See above at ¶ 26.

29.     Disputed that Reihl testified that the License Agreement contained a definition of the phrase CPU cores.  Specifically Reihl testified:

> MR DOYLE: Q. And also that the license agreement contains provisions regarding calculation of CPU cores? Do you see that?
>
> MR. SCOTT: Objection, misleading, calls for a legal conclusion. You can look at the document and answer the question if you can.
>
> MR. REIHL:  A. Yeah, so just so I understand what I'm looking at here, is this the document that was approved and signed? So I don't see any signatures on this so I don't know if this is the one that we're basing -- okay, is this -- is this the signature page, 8? I don't see any of our signatures on this anywhere.

Reihl Deposition at pp. 128-130 (Docket 63-16).

30.     Disputed that Informatica's definition of the term CPU core is based on widespread use of the term.  Billingsley himself testified that in at least one instance where

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 5**

Informatica used the term CPU, Billingsley, a licensing expert for Informatica was unclear on the definition. Billingsley Depo. p. 124. Reihl Decl. at ¶ 37.

      31.     Disputed. Reihl's deposition transcript speaks for itself and those pages do not contain references to "CPU cores" merely references to cores.

      32.     Undisputed, subject to clarification. RELX received a copy of the proposed Exhibit F, but disputes that the Product Description Schedule was accepted and properly incorporated into the License Agreement.

      33.     Disputed. Exhibit B to the License Agreement contains the following language: "Licensee may freely move the Informatica Products set forth above around throughout its global organization, so long as it complies with the license limitations specified herein. However, use of the Informatica Products set forth above is restricted to use in and consistent with the configuration set forth above." To the extent Informatica relies on the Product Description Schedule for this restriction, see above at ¶ 32.

      34.     Undisputed, subject to clarification. RELX initially purchased 16 CPU cores for B2B Data Exchange. The License Agreement speaks for itself.

      35.     Undisputed.

      36.     Undisputed.

      37.     Undisputed, subject to clarification. The 2012 Amendment to the License Agreement ("2012 Amendment") contained, among others, the following capitalized phrases: "Upgraded" and "Informatica Environment licensing model." These phrases are not defined in the 2012 Amendment. The 2012 Amendment contains the following provision: "Capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in that

[License] Agreement.  The terms are also not defined in the License Agreement.  Reihl Decl. at ¶ 15.

38. Disputed.  Following the 2012 Amendment, Informatica continued to charge and receive payment for the 20 CPU cores of B2B Data Exchange identified in the License Agreement.  2015 License Amendment.

39. Disputed.  The 2012 License Amendment contains no reference to a refund.  In 2015, Informatica's refund of $76,516.30 is referenced in the amendment to the License Agreement ("2015 Amendment").  Furthermore, even if there had been a refund, Informatica continued to charge and receive payment for the 20 CPU cores after the 2012 Amendment.

40. Disputed.  Notwithstanding the language in the 2012 Amendment, Informatica continued to charge and receive payment for the 20 CPU cores of B2B Data Exchange identified in the License Agreement.  In Table 1, the 20 CPU cores for which Informatica continued to charge RELX are reflected on lines 10 and 14.  The ending date for maintenance and support reflected on the 2015 for those 20 CPU core licenses was June 30, 2014, well after the 2012 Amendment.  Informatica cannot now claim after receiving the benefit of payments for those licenses that the licenses were surrendered in 2012.

41. Disputed.  Catherine Appel repeatedly testified that Informatica continued billing for the licenses identified in the License Agreement after the 2012 Amendment.  Appel Deposition pp. 43-44, 47, 164-165 (Docket 63-17).

42. Undisputed.

43. Disputed.  RELX did not install the software, Informatica did.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 7**

44.     Disputed, in part. Pursuant to Informatica's License Management Report, the servers identified as psc3813, psc3814, psc3815, psc3816, and psc3817 had 2 CPUs each. The servers identified as psc33841 and psc33842 had 4 CPUs each.  Reihl Decl. at ¶ 38.

45.     Disputed. As Informatica admits, in December 2011, LexisNexis purchased 4 additional licenses, bringing its total license count to 20.  Informatica Rule 56.1 Statement, ¶ 35.

46.     Undisputed that RELX was in compliance with the terms of the License Agreement in 2012.

47.     Undisputed, subject to clarification. The installation in 2012 occurred after the 2012 Amendment.

48.     Disputed.  In November 2012, the software was installed on servers containing 40 cores.  RELX does not admit that the software was installed on 40 CPU cores because that definition is ambiguous.

49.     Disputed.  RELX did not install the software, Informatica did.  In March 2013 the software was installed on computers containing 104 cores.  RELX disputes that the CPU cores totaled 104, because that license term is ambiguous.

50.     Disputed. RELX disputes that the CPU cores totaled 104, because that license term is ambiguous.

51.     Disputed that RELX "installed" an upgrade.  Furthermore, Groff did not copy any copyrighted material.  He executed an upgrade script.  CSF at ¶¶ 34, 35.

52.     Disputed that RELX "installed" an upgrade.  CSF at ¶¶ 34, 35.

53.     Disputed.  Each of the four servers had 8 cores, for a total of 32 cores.  The term CPU core is ambiguous. Furthermore, to the extent "deployed" means installed, Informatica, not

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 8**

LexisNexis performed the installation. To the extent "deployed" means used, LexisNexis disputes that 32 cores were used during the stated time period.

54. Undisputed.

55. Disputed. RELX had either 16 or 4 excess licenses, depending on whether CPU cores is measured by the number of CPUs or the number of cores.

56. Disputed. The total number of cores on the seven ICCE Platform servers was 104. RELX disputes that the CPU cores totaled 104, because that license term is ambiguous. Furthermore, to the extent "deployed" means installed, Informatica, not LexisNexis performed the installation. To the extent "deployed" means used, LexisNexis disputes that 104 cores were used during the stated time period.

57. Disputed. Informatica continued to charge RELX for 92 licenses until 2015. Furthermore, RELX procured an additional 2 CPU core license for B2B Data Exchange in 2013. Accordingly, in February 2015, RELX had the rights to use 94 CPU core licenses for B2B Data Exchange.

58. Disputed, see discussion above in section 57.

59. Disputed. RELX disputes that the CPU cores totaled 104, because that license term is ambiguous.

60. Disputed. According to the audit report, RELX was licensed to install B2B Data Exchange on at least 58 CPU cores.

61. Disputed. According to the audit report, RELX was licensed to install B2B Data Exchange on at least 58 CPU cores.

62. Disputed. The CPU utilization report measured the average usage of cores for each hour measured over a multi-year period. Groff depo p. 111 lines 3-6.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 9**

63. Disputed. The CPU utilization report measured the average usage of cores for each hour measured over a multi-year period. Groff depo p. 111 lines 3-6.

64. Undisputed.

65. Disputed. Ms. Frederiksen-Cross relied on her flawed test environment to arrive at this conclusion, and this conclusion is therefore not based on reliable scientific methodology.

66. Disputed. Ms. Frederiksen-Cross relied on her flawed test environment to arrive at this conclusion, and this conclusion is therefore not based on reliable scientific methodology.

67. Disputed. Ms. Frederiksen-Cross relied on her flawed test environment to arrive at this conclusion, and this conclusion is therefore not based on reliable scientific methodology.

68. Undisputed, but immaterial.

69. Disputed. Mr. Wisvari repeatedly testified that what the license agreement meant in terms of CPUs or cores was very unclear. Wisvari Deposition pp. 177, 179-80, 202-203.

70. Disputed. Mr. Groff testified that LexisNexis did not understand what CPU cores meant in the context of licensing. Groff Depo. at p. 335.

71. Disputed. Mr. Wisvari testified that he did not see anything in the specific line items that of the License Agreement that referred to usage. Groff Depo. at p. 302.

72. Undisputed, but immaterial.

73. Disputed. Informatica's Exhibit Z refers to servers CPC 4713, 4714, 4715, and 4716, not the production servers in the ICCE environment, which were identified with PSC rather than CPC. The servers identified in Exhibit Z were part of the certification cluster and are not part of the current dispute between LexisNexis and Informatica. Exhibit Z.

74. Undisputed.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 10**

75. Disputed. At all times, Informatica was contractually obligated to provide supervision of its consultants. Although it is obvious now that Informatica failed to provide the necessary supervision, RELX relied on Informatica to provide supervision of its lead employees, including Mishra.

76. Disputed. The SOWs required Informatica to perform installations and ensure proper use. Reihl Decl. at ¶ 19.

77. Undisputed, subject to clarification. While it is true that Mishra was supposed to receive direction from RELX, at all times Informatica was supposed to be supervising Mishra. Mishra was supposed to "lead the implementation" suggesting that he needed no supervision from RELX. Reihl Decl. at ¶ 19.

78. Undisputed.

79. Disputed. The term "access rights" is ambiguous.

80. Undisputed.

81. Undisputed, subject to clarification. RELX's internal technical management system requires a technical and business approver for each pending item. The internal technical system has no impact on Informatica's obligations under the Services Agreement or SOWs.

82. Undisputed, but immaterial.

83. Undisputed, subject to clarification. In the same e-mail, Wisvari asks Mishra to identify meeting attendees from Mishra's team that Mishra believed were necessary. Mishra Decl. Exhibit AF.

84. Undisputed, subject to clarification. RELX's internal technical management system requires a technical and business approver for each pending item. The internal technical system has no impact on Informatica's obligations under the Services Agreement or SOWs.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 11**

85. Undisputed, subject to clarification. RELX's internal technical management system requires a technical and business approver for each pending item. The internal technical system has no impact on Informatica's obligations under the Services Agreement or SOWs.

86. Undisputed, subject to clarification. Wisvari thanks Mishra and a member of the hardware team member for "leading the effort at getting these upgrades to the ICCE environment in place."

87. Undisputed, subject to clarification. RELX's internal technical management system requires a technical and business approver for each pending item. The internal technical system has no impact on Informatica's obligations under the Services Agreement or SOWs.

88. Undisputed that Mishra installed the software in March 2013. CSF at ¶ 22.

89. Disputed. Mishra was contractually required to provide leadership on the Informatica implementation. Also, contemporaneous e-mails show that Mishra led the efforts to get the upgrades in place. Exh. AH.

90. Disputed. At the time he installed the software, Mishra was responsible for installing and upgrading the software, recommending the design and architecture of the Informatica platform, recommending best practices in the solution design, providing leadership on the implementation, and importantly, ensuring proper use of Informatica in the solution design. Reihl Decl. at ¶ 19.

91. Disputed. Wisvari relayed the details of the 2012 License Agreement. In any event, this assertion is immaterial because Mishra testified that "to do my job, I never needed that information." Mishra Depo. pp. 90-91.

92. Undisputed.

93. Disputed. A LexisNexis employee executed an upgrade script and did not install version 9.6.1 of the Software on the production servers. Informatica materials show that to change versions of the Software, LexisNexis could perform an install or an upgrade. LexisNexis performed an upgrade rather than an install. CSF at ¶ 34.

94. Undisputed, subject to clarification. Dwight Groff executed the upgrade script.

95. Undisputed.

96. Undisputed that RELX was aware of the number of CPUs and the number of cores on each server. Disputed that RELX was aware of the number of CPU cores, particularly in light of contemporaneous notes showing Mishra misled RELX regarding the number of CPU cores consumed by RELX.

97. Undisputed, but immaterial because the measurement for licensing is CPU cores, not cores.

98. Disputed. Sedlacko testified that he does not know how a CPU core is defined and was unaware of how many CPU cores were on the servers. AR p. 94. Furthermore, Sedlacko's e-mail contains no reference to the phrase CPU cores.

99. Disputed. LexisNexis did not perform the installations of Informatica software on the seven psc servers in the ICCE Platform. CSF at ¶ 22.

100. Undisputed but immaterial. Informatica installed the software pursuant to the statements of work between the parties. CSF at ¶ 22)

101. Disputed.

102. Disputed.

103. Disputed, but immaterial. There is no evidence that any executable code was protected by any of Informatica's copyrights.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 13**

104. Undisputed, subject to clarification. There is no evidence that LexisNexis used 104 cores to process data at any given time.

105. Disputed.

106. Disputed.

107. Undisputed, subject to clarification. Informatica failed to demonstrate that it had a reasonable basis to proceed with an audit, as required by Section 4.3 of the License Agreement.

108. Undisputed, subject to clarification. Informatica was authorized to "examine books, records, and accounts" if it had a reasonable basis to proceed with an audit. Billingsley admitted that "At some point, every Informatica customer will be audited, so it is normal course of business." Billingsley Deposition at p. 41. Informatica also claims that it had a reasonable basis to proceed because it believed a RELX affiliate, governed under a different agreement may have been out of compliance. It later became apparent that Informatica's belief regarding the LexisNexis affiliate licensed under a separate agreement was in compliance.

109. Disputed. LexisNexis responded to Informatica's audit request when it received it. Reihl Decl. at ¶ 39.

110. Disputed. When LexisNexis discovered that it had been misled by Mishra and Informatica, LexisNexis immediately resolved the issue.

111. Disputed. RELX received an audit report replete with mistakes. Reihl Decl. at ¶ 31.

112. Disputed. Informatica failed to give credit for all the licenses LexisNexis owned and failed to honor contractual licensing and maintenance discounts which were still being offered as late as 2015. Reihl Decl. at ¶ 32.

**RELX'S RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF INFORMATICA'S RENEWED MOTION FOR SUMMARY JUDGMENT – Page 14**

113. Disputed. Due to the numerous errors and overreaching contained in the Informatica report, LexisNexis does not agree that the amount reflected in the audit findings constitutes a shortfall in payment. Reihl Decl. at ¶ 33.

114. Undisputed, subject to clarification. LexisNexis does not agree that the amount demanded in Informatica's audit findings constitutes a shortfall in payment. Reihl Decl. at ¶ 33.

115. Disputed. RELX tried to get Informatica to take responsibility, as it was required to do under the Services Agreement. Informatica refused. Reihl Decl. at ¶ 30.

116. Disputed. Sedlacko's e-mail contained absolutely no reference to the phrase "CPU cores" as alleged by Informatica. RELX included in its filing true and correct copies of all e-mails in the chain from March 21 – March 28, 2013. For the sake of brevity, RELX did not include in its filing the 21 e-mails from February 21 – March 20, none of which discussed who would install the Software.

117. Undisputed that Informatica purported to terminate the License Agreement.

118. Undisputed that the License Agreement contained provisions governing termination. Immaterial because the Court entered an order that the purported termination has no effect until the Court rules on Informatica's request for injunctive relief. The Court then left the order in place when it ruled on the request for injunctive relief. October 17, 2017 Hearing Transcript at p. 35.

119. Undisputed, subject to clarification. LexisNexis preserved the installations of Informatica Software because it was the subject of this litigation and it did not want to be subjected to a claim of spoliation. However, LexisNexis has not used Informatica Software or the ICCE Platform to process documents since November 2017. CSF at ¶ 48.

120. Undisputed, but immaterial. The Court entered an order that the purported termination has no effect until the Court rules on Informatica's request for injunctive relief. The Court then left the order in place when it ruled on the request for injunctive relief. October 17, 2017 Hearing Transcript at p. 35.

121. Undisputed, subject to clarification. After November 2017, LexisNexis did not need or use Informatica Software in its ICCE Platform. CSF at ¶ 48.

122. Disputed. RELX has also invested substantial time and resources in hiring Informatica to deploy the software correctly and to supervise its novice employees. Furthermore, LexisNexis did not benefit from any alleged over-deployment of Informatica Software because it was able to process all of its documents on four servers containing 56 cores for more than a year and a half. Reihl Decl. at ¶ 24, CSF at ¶ 46.

123. Disputed. Ms. Frederikson-Cross had no explanation for why LexisNexis could process higher numbers of documents on the ICCE Platform when there were 56 cores connected to the Informatica Grid than when there were 104 cores connected to the grid. That is because there was no benefit to having additional servers or CPUs on the grid. CSF at ¶ 47.

**DATED:** August 13, 2018

                               SCOTT & SCOTT, LLP

                               */s/ Robert J. Scott*
                               By:  Robert J. Scott (Texas Bar No. 24010385)

                               Julie Machal-Fulks (NY Bar No. 885775)
                               550 Reserve Street, Suite 200
                               Southlake, Texas 76092
                               (214) 999-2902
                               (214) 999-0333 (Fax)
                               Attorneys for RELX INC.